UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**JESUS RIVERA,**

    Plaintiff,

v.                                        CASE NO. 3:22cv4921-MCR-ZCB

**ANDREW S. TOKAJER, et al.,**

    Defendant.
_____/

## ORDER

Plaintiff Jesus Rivera brought this putative class action suit on behalf of himself and others, alleging the violation of his and others' constitutional rights by three federal agents, Defendants Federal Bureau of Investigation ("FBI") Special Agent Alex Chan, Special Agent Andrew S. Tokajer,[1] and FBI Director Christopher A. Wray, each of whom is sued in his individual capacity. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Before the Court is the Defendants' Motion to Dismiss, ECF No. 28, pursuant to Federal Rules of Civil Procedure 12(b)(2) and (6), on grounds that the Court lacks personal jurisdiction over Wray and that the Amended Complaint fails to state a *Bivens* claim. On consideration, the Court agrees and grants the motion.

---

[1] The Amended Complaint alleges that Tokajer is an FBI Special Agent, but the Response indicates he is a Special Deputy United States Marshal.

## I. Background

The Amended Complaint alleges that on January 6, 2021, many individuals gathered in Washington D.C. to exercise their constitutional rights to free speech, to peaceably assemble, and to petition their government for redress of grievances. ECF No. 18 at 3–4. Rivera alleges that he attended the demonstrations peacefully and was not among those who engaged in acts of violence in the United States Capitol that day. According to Rivera, any others in the purported class also "were peacefully protesting in Washington D.C. on January 6, 2021,"[2] and, despite having committed no crimes or acts of violence, those individuals, like Rivera, are also nonetheless being "harassed and targeted" by Defendants. *Id.* at 4.

Rivera further alleges that Wray made public statements threatening Rivera and other members of the putative class, stating, "We know who you are if you're out there, and FBI agents are coming to find you," among other similar public statements regarding the events that occurred on January 6.[3] *Id.* at 5. Rivera asserts

---

[2] Rivera alleges that most people peaceably entered the Capitol building that day and were welcomed by United States Capitol Police; they did not stray from the "velvet crowd-control ropes" but "generally acted as peaceable, innocent, wide-eyed tourists sight-seeing in the building." ECF No. 18 at 10.

[3] Rivera also alleges that Wray made statements indicating the FBI agents would be "aggressive" and "have been working around the clock to track down those who participated in the attack and hold them accountable," and that the FBI had doubled its domestic terrorism investigations and arrests "because of the rise in violence from anti-government anti-authority actors." ECF No. 18 at 5.

that Wray and those acting as agents have "turned the FBI into what is in effect their own personal 'Secret Police' or 'Gestapo.'" *Id.* at 6. Rivera alleges in a conclusory manner that "Wray's directives and orders" have violated the constitutional rights of "countless people who did not engage in any criminal activity." *Id.*

Rivera alleges that on January 20, 2021, FBI agents Chan and Tokajer, leading as many as 20 other agents, raided his home forcibly and with guns drawn and arrested him without probable cause. He contends they did not provide a warrant until after the search was completed. Rivera alleges that the agents took property including an iPad, hard drive, camera, SD Cards, and cell phones. Rivera alleges that although he has demanded the return of his property, Defendants have refused. Also, since his arrest, Rivera has been placed on the Department of Transportation Security Administration's flight security list, preventing him from flying "without going through around 45 minutes of extended security." *Id.* at 11.

While not alleged in the Amended Complaint, public records show that Rivera was charged and found guilty following a bench trial of several offenses related to his conduct on January 6, 2021.[4] *See United States v. Rivera*, 607 F. Supp. 3d 1, 11 (D.D.C. June 17, 2022), *appeal filed,* Case No. 22-3088 (D.C. Cir. Nov. 1, 2022).

---

[4] At any stage of the proceeding, including on a motion to dismiss, courts may on their own take judicial notice of publicly-filed documents and court records. *See* Fed. R. Evid. 201; CASE NO. 3:22cv4921-MCR-ZCB

The Amended Complaint purports to assert two causes of action: First, that the Defendants broke into Rivera's residence to silence or retaliate against his speech and political viewpoints, in violation of the First Amendment and second, that the Defendants engaged in an unreasonable search and seizure, in violation of the Fourth Amendment. The pleading also includes class action allegations on the same claims.

Defendants move to dismiss, arguing that Wray has no contacts with Florida, that Rivera has not stated a viable *Bivens* cause of action, and that they are entitled to qualified immunity.

## II. Discussion

### A. Standard of Review

In considering a motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir.

---

*Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013). The published order from the United States District Court for the District of Columbia dated June 17, 2022, states Rivera was charged with, and found guilty of, violating 18 U.S.C. § 1752(a)(1) (Entering and Remaining in a Restricted Building); 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct in a Restricted Building); 40 U.S.C. § 5104(e)(2)(D) (Violent Entry and Disorderly Conduct in a Capitol Building); and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing in a Capitol Building). *See United States v. Rivera*, 607 F. Supp. 3d 1, 2 (D.D.C. June 17, 2022). The court concluded: "The evidence shows beyond a reasonable doubt that Jesus Rivera was no mere passive observer on January 6, 2021. He took a side, and it was the side of the insurrection." *See id.* at 11.

2008). The allegations of the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are not "entitled to the assumption of truth" and therefore are not considered in deciding the sufficiency of the pleading. *See Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555.

Courts apply the same standards when considering the sufficiency of the complaint to allege personal jurisdiction under Rule 12(b)(2). *See Storms v. Haugland Energy Grp., LLC,* No. 18-CV-80334, 2018 WL 4347603, at *3 (S.D. Fla. Aug. 17, 2018) (citing cases), *report and recommendation adopted*, No. 18-CV-80334-BB, 2018 WL 4347604 (S.D. Fla. Sept. 4, 2018). "A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)).

**B.  Lack of Personal Jurisdiction over Wray**

The Court must dismiss an action against a defendant if personal jurisdiction is lacking.  *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999).  To determine whether personal jurisdiction exists over a non-resident defendant, courts apply a two-part analysis, first determining whether the applicable state's long-arm statute provides a basis for personal jurisdiction. *Sculptchair, Inc. v. Century Arts Ltd.*, 94 F.3d 623, 626 (11th Cir. 1996).  The Florida long-arm statute includes two categories of personal jurisdiction—specific jurisdiction under § 48.193(1) and general jurisdiction under § 48.193(2).[5]  *Miller v. Berman*, 289 F. Supp. 2d 1327, 1331 (M.D. Fla. 2003) (citing *Northwestern Aircraft Capital Corp. v. Stewart*, 842 So. 2d 190, 193 (Fla. 5th DCA 2003) (internal citations omitted)).  If a statutory basis for personal jurisdiction is met, courts consider whether sufficient minimum contacts exist between the defendant and the forum state "so as to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the

---

[5]  A court may exercise specific jurisdiction over a nonresident defendant only when the defendant's contacts with the forum state arise from or are directly related to the cause of action. *Miller v. Berman*, 289 F. Supp. 2d 1327, 1335 (M.D. Fla. 2003).  In contrast, a court may exercise general jurisdiction over a nonresident defendant when the suit does not arise out of the nonresident's activities in the forum state but the defendant has continuous and systematic contacts with the forum state.  *See Consolidated Development Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1292 (11th Cir. 2000). In this case, only specific jurisdiction is asserted.

CASE NO. 3:22cv4921-MCR-ZCB

Fourteenth Amendment." *Sculptchair,* 94 F.3d at 626 (internal quotation marks and citations omitted).

Rivera asserts there is personal jurisdiction over Wray under the provision of Florida's long-arm statute providing for specific jurisdiction over any person who has personally, or through an agent, "commit[ed] a tortious act within this state." Fla. Stat. § 48.193(1)(a).2. The Amended Complaint alleges that Wray was "directly and personally involved in the commission of the constitutional violations" by using the FBI agents as his own "personal 'Secret Police' or 'Gestapo,'" by directing the agents to violate Rivera's constitutional rights, and by making statements indicating the FBI was investigating the individuals involved in the January 6 U.S. Capital riot. ECF No. 18 at 5-6. Wray argues the allegations are conclusory and fail to allege that he committed any tortious conduct in Florida. The Court agrees.

The allegations of the Amended Complaint confirm that Wray did not take part in executing the search or arrest at Rivera's home and that the federal agents who did acted pursuant to a warrant. To the extent Wray made public statements or directed that the search and arrest be carried out, his "mere enforcement of federal laws and policies does not confer personal jurisdiction." *Cunningham v. Morlote*, Case No: 5:15-cv-305-Oc-10PRL, 2016 WL 10720161, at *12 (M.D. Fla. Oct. 25, 2016) (finding no personal jurisdiction over non-resident director of the Bureau of

Prisons where no tie to Florida was demonstrated). And Rivera's conclusory assertion that Wray ordered agents to violate his constitutional rights does not plausibly allege wrongdoing or provide any tie to Florida sufficient to establish a *prima facie* case of personal jurisdiction. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006) (finding "vague and conclusory allegations" insufficient). Therefore, the claims against Wray must be dismissed.

## C.  Failure to State a *Bivens* Claim

Congress has not authorized a suit for damages against federal officers who violate constitutional rights.[6] In three very limited circumstances, however, the Supreme Court has recognized such a remedy against federal agents. Beginning with *Bivens*, decided in 1971, the Court first authorized a damages suit for a Fourth Amendment claim against federal narcotics agents who allegedly manacled the plaintiff in front of his wife and children and threatened his family during an arrest and search. 403 U.S. at 397. In 1979, the Court authorized a damages suit under the Fifth Amendment against a congressman for a former staffer's sex discrimination claim, *see Davis v. Passman*, 442 U.S. 228 (1979); and in 1980, the Court authorized a damages suit under the Eighth Amendment for a prisoner's claim of inadequate

---

[6] By contrast, in 42 U.S.C. § 1983, Congress has authorized a suit for damages against state actors when they violate federal statutory and constitutional rights.

medical care in federal prison, *see Carlson v. Green*, 446 U.S. 14, 18-19 (1980). Since then, the Court has not expressly recognized any extension of *Bivens*, and recently, the Supreme Court emphasized anew that "creating a cause of action is a legislative endeavor" and cautioned that a *Bivens* suit in any additional circumstances is "a disfavored judicial activity."[7] *Egbert v. Boule*, 142 S. Ct. 1793, 1802-03 (2022) (quoting *Ziglar v. Abbasi*, 582 U.S. 120, 133-34, 136-37 (2017)).

When asked to recognize a *Bivens* claim, the Court considers two inquiries: (1) "whether the case presents 'a new *Bivens* context'—*i.e.*, is meaningfully different from the three cases in which the [Supreme] Court has implied a damages action," and (2) if so, whether "special factors" exist sufficient to remove the matter from Congress's consideration in favor of allowing the courts to decide whether to extend *Bivens* to a new context, which again is disfavored. *Id.* at 1803 ("[A] *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'") (quoting *Ziglar*, 582 U.S. at 136); *Hernandez v. Mesa*,

---

[7] As the Fourth Circuit has very recently observed, while the Supreme Court "initially described *Bivens* broadly as establishing that 'the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court . . .,' *Carlson*, 446 U.S. at 18, in the 43 years since *Carlson*, the [Supreme] Court has 'consistently rebuffed' requests to expand implied *Bivens* actions." *Bulger v. Hurwitz*, 62 F.4th 127, 136 (4th Cir. 2023) (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).

CASE NO. 3:22cv4921-MCR-ZCB

Page 10 of 16

140 S. Ct. 735, 743 (2020). Although two steps are articulated, the Supreme Court has explained that effectively, "those steps often resolve into a single question" of whether "Congress might be better equipped to create a damage remedy." *Id.* (quoting *Ziglar*, 582 U.S. at 139-40); *see also Senatus v. Lopez*, No. 20-CV-60818, 2022 WL 16964153, at *4 (S.D. Fla. Oct. 12, 2022) ("In short, in *Egbert*, *Ziglar's* two-step *Bivens* analysis has been reduced to a single step that makes an action under *Bivens* virtually unavailable to litigants."), *report and recommendation adopted,* 2022 WL 16961323 (S.D. Fla. Nov. 16, 2022). Importantly, when asked to imply a *Bivens* action, courts must proceed with caution. *Id.* (stating the operative "watchword is caution," quoting *Hernandez*, 140 S. Ct. at 742).

The Defendants argue that the Amended Complaint fails to state a *Bivens* cause of action, and the Court agrees.[8] Rivera first asserts a First Amendment retaliation claim. In light of the Supreme Court's decision in *Egbert,* the claim clearly presents a new *Bivens* context—one that has been expressly rejected by the Supreme Court. *Egbert*, 142 S. Ct. at 1807 ("There is no *Bivens* action for First Amendment retaliation . . . Congress, not the courts, is better suited to authorize such

---

[8] This analysis would apply equally to Wray and would result in the dismissal of the claims against him even if personal jurisdiction had been adequately alleged; and additionally, "*Bivens* is not designed to hold officers responsible for acts of their subordinates." *Ziglar*, 582 U.S. at 141.

CASE NO. 3:22cv4921-MCR-ZCB

a damages remedy."); *see also Johnson v. Cook*, No. 21-12096, 2022 WL 6960974 at *2 (11th Cir. 2022) (relying on *Egbert* to affirm the district court's refusal to extend *Bivens* to a First Amendment retaliation claims). Rivera relies on a Fourth Circuit case to argue that a claim for First Amendment retaliation is viable under *Bivens*, citing *Trulock v. Freeh*, 275 F.3d 391, 404-05 (4th Cir. 2001). There, the court found a viable First Amendment retaliation claim based on a search and interrogation conducted after the plaintiff had authored an article that was highly critical of the FBI. *See id.* However, the Court finds Rivera's reliance on the case at best misplaced. The *Trulock* court did not conduct a *Bivens* context analysis but rather assumed a constitutional claim for damages would lie against the federal agents under *Bivens*; moreover, *Trulock*, a 2001 Fourth Circuit case, is not precedential in this Circuit, and any persuasive authority it may have held is completely undercut by *Egbert,* 142 S. Ct. at 1807 (rejecting a First Amendment retaliation claim as a new *Bivens* context).⁹ *See also Montalban v. Samuels*, No. 21-11431, 2022 WL 4362800, at *3 (11th Cir. 2022) (stating the Supreme Court has not recognized a Bivens claim under the First, Sixth, and Fourteenth Amendments).

---

⁹ In addition, the existence of probable cause bars a retaliatory arrest claim, even if a *Bivens* cause of action were available, and the claim is barred by Rivera's conviction, which he has not pled has been overturned. *Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.").

Rivera's First Amendment retaliation claim fails to state a viable *Bivens* cause of action.

Rivera also alleges a Fourth Amendment claim. While *Bivens* itself arose under the Fourth Amendment and involved a search and seizure, the Court must consider the specific context of the present claim. "[T]reating all search-and-seizure cases the same would contradict the Supreme Court's direction that a context can be new even if it involves the same constitutional right as an existing case." *Farah v. Weyker*, 926 F.3d 492, 499 (8th Cir. 2019). Also, the Court considers the Supreme Court's directive that "if there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Egbert*, 142 S. Ct. at 1803 (quoting *Hernandez*, 140 S. Ct. at 743); *see also Montalban*, 2022 WL 4362800, at *3 (stating although the Supreme Court has not defined all special factors that counsel hesitation, hesitation is warranted "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong") (quoting *Ziglar*, 582 U.S. at 137).

Rivera's Fourth Amendment claim presents a new *Bivens* context because the facts are meaningfully different from the Fourth Amendment claim asserted in *Bivens*. *See Ziglar,* 582 U.S. at 139-40 (stating meaningful differences include "the

rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; . . . the statutory or other legal mandate under which the officer was operating; [and] the risk of disruptive intrusion by the Judiciary into the functioning of other branches"). The Fourth Amendment claim in *Bivens* was based on a warrantless entry into an individual's home and subsequent arrest allegedly without probable cause, *see* 403 U.S. at 389-90. Rivera argues his case is indistinguishable from *Bivens*, but this argument ignores the fundamental distinction between the two situations—here, the federal agents acted pursuant to a warrant. Rivera's argument that this is a distinction without a difference is unpersuasive and disingenuous. Courts have recognized that the existence of a warrant is a critical and meaningful distinction. *See Senatus v. Lopez*, No. 20-cv-60818, 2022 WL 16964153, at *4 (S.D. Fla. Oct. 12, 2022) (applying *Egbert* and stating numerous cases have found that a warrant presented a critical distinction "because the legal mandate under which defendants were operating differs from the warrantless narcotics-investigation circumstances in *Bivens*"), *report and recommendation adopted*, No. 20-cv-60818, 2022 WL 16961323 (S.D. Fla. Nov. 16, 2022); *Cienciva v. Brozowski*, No. 3:20-CV-2045, 2022 WL 2791752, at *9 (M.D. Pa. July 15, 2022) (collecting cases and ruling, "the presence of a warrant is a crucial difference in the *Bivens* new-context analysis"). The undersigned agrees, and Rivera cites no case to

Page 14 of 16

the contrary. A warrant provides presumptively valid legal process for a search or arrest and is based on a judicial finding of probable cause, which differs materially from the context of *Bivens* and thus presents a new *Bivens* context.

Additionally, special factors caution against extending *Bivens* to this new circumstance. Rivera's challenge—that this search and arrest were part of an effort to terrorize, harass, or chill peaceful protesters like himself—would require probing into the underlying existence of probable cause and executive investigative and charging decisions, which would significantly intrude into the executive branch's function and raise serious separation of powers problems. *See Farah*, 926 F.3d at 501 (explaining that probing probable cause "would invite a wide-ranging inquiry into the evidence available to investigators, prosecutors, and the grand jury," and although courts are sometimes tasked with this type of review, "such after-the-fact inquiries still pose a risk of intrusion on executive-branch authority to enforce the law and prosecute crimes."). The Court also questions the necessity of a damages remedy, mindful that "a court may not fashion a *Bivens* remedy if Congress already has provided or authorized the Executive to provide an alternative remedial structure." *Egbert*, 142 S. Ct. at 1804. As noted by the Defendants, Congress has authorized alternative remedial schemes to deal with claims of wrongful arrest and prosecution, the wrongful seizure of property, and the return of property, such as

CASE NO. 3:22cv4921-MCR-ZCB

through the Federal Rules of Criminal Procedure, the Federal Tort Claims Act, or habeas law. *See, e.g., Crocker v. USP 1 Coleman*, No. 5:20-CV-568-CEM-PRL, 2022 WL 272173, at *5 (M.D. Fla. Jan. 6, 2022) (stating the FTCA can be considered a potential alternative remedy, explaining the court's hesitation to extend *Bivens*); Fed. R. Crim. P. 12, 41; 28 U.S.C. §§ 2555, 2241; ECF No. 28 at 15-22 (discussing multiple alternative remedial schemes). Furthermore, Rivera does not challenge the validity of the warrant or probable cause in anything but a conclusory manner, and he acknowledges that he has the option of appealing his conviction.[10] ECF No. 32 at 3 n.1. The recognition of a Fourth Amendment damages claim under *Bivens* where the search and arrest were accomplished pursuant to the legal process of a warrant would not only interfere with the executive branch's investigatory and prosecutorial functions but also add systemic uncertainty and costs that far outweigh the benefits of an implied damages suit. The Court has ample reasons to pause and finds that the Fourth Amendment claim in this instance fails to state a *Bivens* cause of action.

---

[10] In fact, Rivera has appealed his conviction. *See United States v. Rivera*, Case No. 22-3088 (D.C. Cir. Nov. 1, 2022). Even assuming the claim were viable, Rivera would have to allege that his conviction had been invalidated in order to bring a claim attacking the search, if his conviction was predicated on the fruits of that search. *See Abella v. Rubino*, 63 F.3d 1063, 1065 (11th Cir. 1995) (recognizing that the bar of *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), applies in a *Bivens* suit to preclude a cause of action that "would necessarily imply the invalidity of [a] conviction," unless the conviction has been invalidated).

Having concluded that no viable cause of action is pled, the class action allegations necessarily fail as well, and the Court finds it unnecessary to consider the Defendants' claims for qualified immunity.

Accordingly, the Defendant's Motion to Dismiss, ECF No. 28, is **GRANTED**.  The Clerk is directed to close the file.

**DONE AND ORDERED** this 5th day of July 2023.


*M. Casey Rodgers*
**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**